Good morning, Your Honors. May it please the Court, my name is Jenny Morriff and I represent Defendant Appellants Sowle and Short. Your Honors, today we're here on an interlocutory appeal on a denial of qualified immunity associated with a due process denial of a liberty interest claim, wherein the plaintiff alleges he was... Well, you don't really have a denial of qualified immunity at this time. What you have is the district judge having granted what you wanted, saying the complaint as currently drafted doesn't work. You won. Now, you just want to win a little more. Well, we always want to win a little more, but... And you want to win a little more on appeal before you're seeing the next complaint. Interestingly, Your Honor, what the Court did was twofold. We moved for qualified immunity and we moved for dismissal for failure to state a claim. The Court did two things. First, she denied qualified immunity. And then she said, plaintiff can go ahead and amend the pleading. But she denied qualified immunity on the basis that the way she phrased it was that the argument was that these persons could not be liable because they were not the supervisors of Mr. Boggs. And she said that's not true, that you don't have to be a supervisor as long as you participated sufficiently in the denial of the constitutional rights, but that the complaint did not adequately set forth that participation. Isn't that what happened? Well, I think that that's a fair summary, Your Honor. However, after we have the magistrate's findings of fact and recommendations, we have the Tibbetts case that comes out. In the Tibbetts case, I believe Ninth Circuit opinion is directly on point here. And in Tibbetts, the Ninth Circuit, the circuit says that where Governor Kulingowski does not have authority to terminate an employee who is down the line in the chain of command, that he is entitled to qualified immunity and that no due process denial can stand. Now ---- That was a little bit different, though. That case involved the governor. It did. There were questions about what his role was in that political role. There were a lot of factors at issue there. So I think I would be the first to say that Tibbetts is relevant, but I'm not sure it's dispositive. Okay. Well, and, Your Honor, since you're on the panel, you certainly ---- I actually wrote the opinion. You wrote the opinion. So ---- I'll take all the blame for it. All right. So, but so Kulingowski is the governor who is over the board of directors of SAF, who then has a president of SAF, and it's the plaintiffs, Tibbetts and another plaintiff, are the people who are ultimately terminated. And in that case, Your Honor, it was ruled that Governor Kulingowski did not have authority to terminate. And so that was a basis for qualified immunity. My question to you is, are you taking the position that under no facts that could be pleaded, if the plaintiffs proceed to amend, no facts could be pleaded, given Tibbetts, under which the clients you're representing could possibly be held liable under the doctrine of qualified immunity? So it doesn't make any difference what their amended complaint looks like. There is, as a matter of law, no theory in light of Tibbetts that could ---- under which they could ever be held liable. Well, the complaint currently says that the person who terminated Mr. Boggs was D.A. Shrunk. So unless they change the pleading to say that someone else, like Sol or Short, terminated D.A. Shrunk, then, I mean, under no facts of this case could be pledged that Sol or Short had authority. Aren't we on a posture where that complaint has been dismissed and with leave to amend? Well, I think that this is the kind of sticky situation that defendants are put in. Because under qualified immunity, we have the Cohen case and the collateral doctrine rule that says that motion to dismiss rulings on qualified immunity are final orders for which appeal is appropriate. If defendants don't take our appeal and we just sit and wait for the amended appeal to come or amended complaint to come forward without taking an appeal, can it not be argued that we waived our opportunity to appeal? In fact, Plaintiffs' Counsel has already argued previously that that exact circumstance was going to occur, that this Court, the district court, positively ruled or directly addressed the issue of qualified immunity as a matter of law, and therefore, it represented the law of the case. So the idea being the reason you're allowed to appeal a qualified immunity ruling that's adverse to you, not one that's in favor, in your favor, but the reason you're allowed to appeal a qualified immunity ruling that's adverse to you and to do so interlocutorily is to favor your clients so they can get an early and prompt termination of litigation. The theory under Forsyth is that immunity is not merely immunity from damages, but immunity from litigation. And the whole thing is designed to allow you to go through this process quickly and expeditiously. Correct, Your Honor. Which is what we're trying to do here. Well, what you're doing, in fact, is dragging this out, because I don't see how we can say, given what's in front of us, that it's impossible for a new complaint to allege liability without the possibility of official immunity. I need to see the new complaint. You probably know the de facto rule, and that is if a district judge dismisses a complaint under 12b-6 and does so without leave to amend, just read Wright and Miller, they'll tell you that's an almost automatic reversal by us. That is to say, it is almost automatic that the district judge dismissing under 12b-6 must give the plaintiff a chance to replead at least once. So how are we to say, well, they haven't replead, but I know they can't? Well, let's look at one of the other arguments that we have, and that's the temporal proximity between the time of the termination from employment and the time that the disclosure was made. There can be no ‑‑ the facts are already pled. There's a 114‑day delay between the termination from employment and the disclosure of records. Well, that depends on when publication occurred. That's correct. It could well be that when they were placed, you know, it was placed in the personnel file. The argument could be it was foreseeable under Oregon's disclosure law that that could be made public upon request. Now, the district court already ‑‑ in the circumstances, it was pretty clear that anything that went in a personnel file in that case would become of immediate interest. Now, there is no pleading under the complaint, under the operative complaint, that placement in a personnel file was publication. No, I understand. I understand. I'm still trying to then understand why ‑‑ what we're dealing with here, because the complaint has been dismissed for failure to state a claim. Now, I agree that the magistrate judge's ruling denied qualified immunity on the complaint as pled. But what is ‑‑ what set of facts are we dealing with? You've won on the motion to dismiss. There's no complaint there. So there's no law of the case to be worried about until they replete. You're saying if they replete, your concern is that the ruling on qualified immunity will foreclose qualified immunity defense under a new set of facts? Correct, Your Honor, because, I mean, that's the assumption that we're going under and, in fact, the arguments that were made below. Defendants want to be fully heard on the qualified immunity defense and the application of Tibbetts and the other cases as cited in the briefing. But why wouldn't it be ‑‑ why don't we need to know, and more importantly, why doesn't the district court ‑‑ well, I guess the important thing is we need to know what are the factual predicates that the plaintiffs have settled upon to allege that your clients should not be and should not escape liability under qualified immunity? Well, in order to prove the stigma plus test, you have to be able to show that these defendants imposed the plus, and that's a determination. And you're saying if there's nothing they could possibly allege, amendment would be futile. And if there's nothing they could possibly allege to come within how you've described stigma plus, then nothing will change. The posture of your clients in the termination process will always have been the same thing. The concern that the county defendants ‑‑ and I'm going over my time here. The concern that we have is that we're fully heard on the issue of qualified immunity in light of the Ninth Circuit's ruling in Tibbetts and subsequent cases. Under no circumstances do we want to have waived or sat on our laurels and not taken the opportunity to appeal when it appeared necessary. So, you know, that's where the county is going with that. And so we're looking to be heard fully on the issue of qualified immunity. And if it's not now, then, you know, if it's remanded back to the district court with a ruling to consider Tibbetts or, you know, just so long as we can ‑‑ How about a ruling to consider the next complaint? Well, so long as there's no preclusion, then, you know, that would be appropriate, Your Honor. And I'll let Mr. Bruchetto continue. Well, you've got ‑‑ fully used your time. We'll hear from the other side, but we'll make sure to give you a chance to respond. Thank you. Good morning, Your Honor. Steve Bruchetto for the plaintiff, Robert Boggs. This case is really a case about whether the case is in a posture for this Court's review. Our position is that whether you look at the jurisdictional issues, whether you get to the qualified immunity issues, you come to the same conclusion that it's not an appropriate qualified immunity case for this Court's review at this time. Well, you actually did, in fact, file an amended complaint. We did. It's not in the record, but you did. It is in the record in the district court. In the district court. I don't believe it's properly before the court of appeals. And we don't have a ruling from the district court on that amended complaint. We do not have a ruling from the district court on the amended complaint. The district court has effectively stayed all proceedings on everything, waiting for the outcome of the Ninth Circuit proceeding. So the ‑‑ I ‑‑ Are you saying that you can file an amended complaint that will change the basis for the district court's ruling on qualified immunity? That I can file ‑‑ that question assumes that I would want to change the district court's ruling on qualified immunity. Obviously, it came out in our favor. So I don't think that I would try and ‑‑ I don't know if I could file a complaint that would change it, but I probably wouldn't, even if I could think of a way. There are rulings that the district court made getting to the bottom line as to whether or not a 12B6 motion should be granted and whether qualified immunity was proper. There are rulings that the district court made that I can file a complaint that I think would alter the district judge's view of some of those rulings, but I don't think that changes the qualified immunity issue. Review the bedding for me. What was the basis for the district court's 12B6 dismissal? I didn't hear that, Your Honor. Review the bedding for me. What was the basis for the district court's 12B6 dismissal? The basis for the district court's 12B6 dismissal was that the complaint did not adequately allege how the defendants participated in causing the deprivation of Mr. Boggs' civil rights. There was an allegation in the complaint alleging that each of the defendants participated. Defendants argued that they needed to know how. The magistrate judge ruled, agreed with the defendant and said we needed to plead how. She also referred to facts in the record of a related proceeding on summary judgment and said that she didn't think it would be futile to amend the complaint. And so the magistrate judge is saying if these defendants who stayed in the case, at least for now, did participate, then they are denied qualified immunity. But first I need to know whether they sufficiently participated. Am I getting that right? I agree with that. I agree with that. She put them in different sections of her report. She did. But isn't that sort of the bottom line? That is the bottom line. And isn't their participation really simply that they advised their client, the authorities that they worked for, that these disclosures could be made? I think that the role of the three individuals will differ and will. Well, at most, at most there was an advice of some sort. I would characterize it as at least advice. For example, one of the defendants I believe we will be able to submit evidence that was involved in advising regarding the termination decision in addition to the, you know. So that's additional. I think that one of the defendants that we'll be able to offer evidence was involved in making decisions as to or advising about decisions as to which documents in particular get released. I mean, that's fair. So, I mean, I think it's at least advised. Can I follow up the answer you gave to Judge Fletcher? Yes. His opening question about repleting. The plaintiffs were given leave to replete as to defendant's sole and short to specify, specifically allege how they participated in the constitutional deprivation. And you're saying that you feel you can stand on the complaint as it currently stands and ignore that? No, I'm not saying that. You said you didn't think you would replete because you're happy with the order. I'm trying to understand. I understand that the magistrate judge denied qualified immunity, but then when she goes on to say they can replete or you can replete to be more specific and you don't do it, I'm kind of wondering what you think is going to happen. You'll just go in and argue tibbits and whatever else is relevant based on the same complaint. In light of the case that apparently wasn't there. I'm not tracking the connection between your question and Judge Fletcher's. I understood Judge Fletcher's question to be could you replete to change the ruling on qualified immunity? Not did I replete or would I replete. No, I understand. But I'm not sure I understand the thrust of the magistrate judge's order adopted by the district court. It says that they're not entitled to dismissal based on qualified immunity defense, but then grants you leave to replete to allege how they participated in the constitutional deprivation. Correct. And what's the purpose of the repleting? To see if we state a claim. Against them? Against them. Regardless of qualified immunity? Regardless of qualified immunity. I don't know that I would characterize it that way. I think that I believe what the magistrate judge was doing was a couple of things. The magistrate judge was involved in two related proceedings. She'd gotten almost to the point of ruling and summary judgment in one case. She was now ruling on whether a second case goes forward. I think what she was trying to do is trying to move things forward as quickly as possible. There is a logical inconsistency between ruling that the motion to dismiss should be granted and then ruling on qualified immunity. I can't resolve that other than to say that I think she was trying to push things along quickly. Whatever speculation there may be about what she's intended to do, I'm trying to understand what the effect of us accepting the argument that we don't address qualified immunity at this stage. So we have two rulings, one of which gives you leave to amend, which you say that you don't know that you, with respect to qualified immunity, need to do anything. Counsel for the county is saying, well, their concern is if they don't appeal and we don't address it now to address the adverse ruling on qualified immunity, you'll argue that it's law of the case that you have gotten past the motion to dismiss on qualified immunity and, therefore, they've got to go to trial on it. I appreciate the direct question. I think that we've stated in our brief and my position here is that the appropriate point for the county to have raised its appeal of a denial of the motion to dismiss is once the court denied the motion to dismiss. And so if we go back and we litigate again under a new complaint and the court denies a motion to dismiss the new complaint, I think that at that point in time the qualified immunity issue will be properly raised for jurisdictional purposes. I think the county will still have difficulty because its issues are bound up in the facts, but that's not your question. Your question is will they have effective review of their arguments that they should be entitled to qualified immunity on a motion to dismiss? I think they do. They will. Now, this law of the case thing is sometimes quite tricky. I don't view law of the case as preventing a district judge or magistrate judge from changing their mind. Sure, I agree. Nor do I think it mandatory on defendants in a position to assert qualified immunity that they take an interlocutory appeal. If they're entitled to an interlocutory appeal in a posture of a case, they can take it. But they don't have to. They're not stuck merely because they failed to appeal. Now, if they don't appeal from a final judgment, then they're stuck. But if they don't take an interlocutory appeal which is available to them and they decide, listen, I'm just going to litigate the case to the end and then I'll appeal if I lose, they can do that. They don't lose anything by not taking an interlocutory appeal. That's right. And the Supreme Court has rejected the Ninth Circuit's one appeal only in qualified immunity cases. So it's plausible that there's an appeal of a summary judgment decision on qualified immunity too. So, I mean, there's lots of options. I do want to address I just have to say I see lots of reasons for us not to hurry into a decision now when things could change fairly dramatically in the district court based upon your new complaint, which I understand is in the district court record. I have in my lock book looked at it, but I have not. I don't want to look at it. All right. Very good. I'm looking at this case in the posture in which it came to us on appeal. Thank you, Judge. I notice my time has expired. I appreciate your patience. Any further questions? No. Okay. Response? Thank you, Your Honors. I appreciate the comment regarding whether or not we're required to take the interlocutory appeal. And as I look at the case law, it's far from absolutely certain that that's the case. When we look at the Iqbal case, I might be saying that wrong, but it's the Ashcroft, the Iqbal case I cited in the briefing. That case says that a denial of qualified motion at the dismissal stage is a final appealable order. Now, as Your Honor pointed out earlier, the whole purpose of qualified immunity is to avoid public officials going through the cost, expense, and time of litigation and discovery. So we're looking at the earliest possible stage, we should be looking at appellative review for these orders. So if we rushed it here and got to an appeal too soon, then that may be the court's ruling today. But the county respectfully requests that we be given an opportunity to be fully heard on the issue of qualified immunity at the district court level and in light of Tibbetts and the other case law. Okay. Thank you. Thank you. Thank both of you. The case of Boggs v. Sowell now submitted for decision. The next case on the argument calendar with parties appearing by video, N. Ray Duncan. Mr. Duncan. We're setting up the video here. Have we got the Screen Actors Guild waivers for all the parties there? We're not that good, Your Honor. Nor are we. Okay. Okay. Okay. Okay. Okay.  Okay. Okay. Okay. Okay. Okay. Okay. Okay.
judges: Jones, Fletcher W. , Fisher